UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACKIE STICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CV-0261-CVE-FHM |
| | ) |
| CITY OF TULSA, a Municipal Corporation of the State of Oklahoma, | ) ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 32). Defendant City of Tulsa (the City) argues that it did not discriminate against plaintiff because of her gender in terms of her pay, and it asks the Court to enter summary judgment in its favor on plaintiff's claims under the Equal Pay Act, 29 U.S.C. § 206(d) (EPA), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).

**I.**

The City employees a wide range of employees, and the City uses a pay scale that groups "positions with similar duties and requiring similar knowledge, skills, and abilities . . . in the same classification." Dkt. # 32-4, at 3. Each position is assigned a pay group designator and a pay grade and, in some cases, an employee's initial pay grade "may additionally be determined based on hiring considerations and/or external market value." Id. The City's utilities department hires employees whose job is to "ensure accurate revenue billing . . . and other related assigned duties," and these employees are classified as utilities testing analysts, utilities analysts, and senior utilities analysts. Dkt. # 32-1; Dkt. # 32-2; Dkt. # 32-3. Each of these positions requires a bachelor's degree in

accounting or business administration, but only the position of utilities analyst required a master's degree or certification as a certified public accountant (CPA). Id. A utilities testing analyst is classified as an administrative or technical (AT) employee at pay grade 36, and the salary range is $47,213 to $74,125. Dkt. # 32-1; Dkt. # 32-6. The pay scale for a utilities analyst is classified as AT 40 with a pay range of $50,445 to $79,198. Dkt. # 32-2; Dkt. # 32-6. The position of senior utilities analyst is classified as an exempt (EX) position and is classified at pay grade EX 44 with an annual salary of $55,490 to $93,785. Dkt. # 32-3; Dkt. # 32-5.

On September 4, 2003, the City hired Jackie Stice as a customer service representative in the public works/utilities department, and her rate of pay was $10 per hour (or $20,800 annually). Dkt. # 32-8, at 2. Stice had a high school diploma and some college credits, but she did not have a bachelor's degree. Dkt. # 32-9, at 2-3. She was promoted to the position of utilities credit analyst in July 2004, and her annual salary was increased to $25,791.12. Dkt. # 32-8, at 3. In August 2006, Stice received a promotion to the position of utilities service team supervisor, and her annual salary was $31,266. Id. at 4. While she was employed by the City, Stice earned an associates degree and a bachelor's degree. Dkt. # 44-6, at 2-3. In March 2007, Stice was promoted to the position of utilities testing analyst at pay grade AT 36, step C, and her annual pay was increased to $39,887.52. Dkt. # 32-8, at 14. Stice received several step increases and, by December 2014, she was paid $46,662.98 at pay grade AT 36, step F. In 2012, Stice had applied for a promotion to utilities analyst, but she was not certified for the position because she did not have a master's degree and she was not a CPA. Dkt. # 32-11.

The City offered Stice a promotion to senior utilities analyst in December 2014, and she was informed that she would be moved up to pay grade EX 44, step C, for an annual salary of $51,451.32. Dkt. # 32-13, at 4. At the time, there were two other senior utilities analysts, Tammy Turley and David Ward, and Turley was listed as the higher ranking employee on the finance department utilities administration organizational chart. Dkt. # 32-12. Turley has submitted an affidavit stating that Ward earned approximately $11,000 more than she earned, even though she had a longer tenure as a senior utilities analyst.[1] Dkt # 44-11, at 1. Stice was concerned that her promotion would cost her the opportunity for a raise at the position of utilities analyst and that this would result in a lower salary at the position of senior utilities analyst than she would have had if she progressed through the AT 40 pay grade. Dkt. # 32-13. City policy states that "the Human Resources Department and the department head or designee will agree upon an appropriate promotional rate for employees that may vary from 5% to 15% above the employee's former rate of pay," but the standard increase is typically 10 percent. Dkt. # 32-7, at 3; Dkt. # 32-36. Stice's supervisor, Sean Ratliff, requested that Stice receive a raise greater than 10 percent "due to her skipping a step, experience, talent and pay discrepancies" with other employees in the utilities department. Dkt. # 32-13, at 3. Ratliff's request was approved and Stice was placed at EX 44, step

---

[1] Turley states that she resigned from her job with the City around March 2015. Dkt. # 44-11.

D of the pay scale upon her promotion to senior utilities analyst for an annual salary $53,518.40.[2] Id.

On November 13, 2015, Stice sent an e-mail to Ratliff alleging that she was being paid less than male employees in her department, even though she believed that she was performing higher quality work, and Stice's complaint was referred to the human resources department. Dkt. # 32-14. Lori Hannon investigated Stice's complaint of unequal pay among male and female employees in the utilities department, and Stice sent Hannon a chart showing the pay of employees who she believed were relevant to her complaint. Dkt. # 32-15. Stice states that she obtained the information using a Freedom of Information Act request and that the information was accurate as of November 30, 2015. Id. at 2. The chart shows that Stice was paid $55,494 and another senior utilities analyst, Karen Randell-Clark, was paid $57,619, but Ward was earning $79,206. Id. at 2-3. The chart also shows the pay of the utilities testing analysts and utilities analysts, and Stice earned less than all but one male employee. Id. Hannon prepared a memorandum and stated that she had reviewed the personnel files of the persons identified in Stice's complaint, and Hannon concluded that any differences in pay were unrelated to gender. Dkt. # 32-16, at 2. Instead, Hannon stated that "the differences in pay were due to employees' overall tenure, tenure within a position, employee promotional movement, employee experience and/or education level." Id. However, Hannon conducted a salary review of all employees at level 40 and 44 in the finance department, and she

---

[2] Plaintiff argues that her salary upon her promotion was below the minimum salary for an employee at the pay grade of EX 44. Dkt. # 44, at 7. However, plaintiff cites a pay scale that took effect after her promotion became effective, and she was paid the appropriate salary for an EX 44, step D employee based on the pay scale in effect at the time. Dkt. # 44-4, at 2. As the case progresses, plaintiff will not be permitted to make any argument that she was paid below the minimum salary for an EX 44 employee upon her promotion to senior utilities analyst.

recommended that Stice's salary be increased to $68,142. Dkt. # 32-17, at 2. Hannon found that Stice's salary was "significantly" behind the other current senior utilities analyst, Ward, and that Stice was paid less than utilities analysts at pay grade AT 40. Id.

Hannon's recommendations were forwarded to the head of the finance department, Mike Kier, and Kier wanted to review all level 40 and 44 employees in the entire finance department before adjusting anyone's salary. Dkt. # 32-18. The human resources department was asked to evaluate whether the utilities testing analyst, utilities analyst, and senior utilities analyst positions were properly classified as separate positions, and each of the employees in those jobs completed a questionnaire about his or her duties and the education needed to complete his or her job. See Dkt. # 32-19; Dkt. # 32-20; Dkt. # 32-21. Stephanie Fenton, a human resources analyst, determined that the three finance positions in the utilities department were properly classified, and the City conducted a salary evaluation to determine if the salaries of each employee at level AT 36, AT 40, and EX 44 fell within one standard deviation of the mean. Dkt. # 32-22. Ken Factor, the City's manager of compensation and policy administration, recommended that the salaries of seven employees be increased as a result of the salary evaluation. Dkt. # 32-23, at 3. Stice's salary was increased to $66,436 as a result of the salary adjustments recommended by Factor. Id.

Stice appealed the denial of her pay discrimination complaint to the Civil Service Commission (the Commission), and her complaint was initially heard on July 14, 2016. Dkt. # 32-25. Hannon made a presentation to the Commission and Stice elected to make her presentation at the next meeting in August 2016. Dkt. # 32-25, at 4. Stice made her presentation in support of her complaint on August 11, 2016, and the Commission denied her claim of gender-based pay inequality. Dkt. # 32-26, at 4. Stice filed a charge of discrimination with the Equal Employment

5

Opportunity Commission (EEOC) and she received a right to sue letter. On April 10, 2017, Stice filed this case in Tulsa County District Court alleging claims under the EPA and Title VII, and she seeks over $75,000 in damages. Dkt. # 2-1, at 7-12. The City removed the case to federal court.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

6

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant seeks summary judgment on plaintiff's claims under the EPA and Title VII. Defendant argues that there is no evidence that it paid plaintiff less than her male colleagues because of her gender, and any difference in pay can be explained by factors other than sex, such as qualifications and experience. Dkt. # 32, at 20. In response to the motion for summary judgment, plaintiff argues that defendant does not contest her prima facie case of discrimination under the EPA, and that defendant cannot establish any of the affirmative defenses available under the statute. Plaintiff states that she is not asserting a disparate impact claim under Title VII, but she argues that there is sufficient evidence giving rise to a genuine dispute as to a material fact that the City intentionally discriminated against her because of her gender in violation of Title VII. Dkt. # 44, at 10.

### A.

The EPA prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1). However, the statute provides four affirmative defenses that would allow a difference in pay between male and female employees: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality

7

of production; or (iv) a differential based on any other factor other than sex." Id. The plaintiff has the burden to demonstrate that "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." Riser v. QEP Energy, 776 F.3d 1191, 1196 (10th Cir. 2015) (quoting Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997)). If the plaintiff comes forward with evidence to support each element of a prima facie case under the EPA, the burden shifts to the employer to "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." Id. (emphasis in original). The employer's burden is one of ultimate persuasion, and "in order to prevail at the summary judgment stage the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006).

Defendant does not contest that plaintiff can establish a prima facie case under the EPA to the extent that Ward and Buchanan are considered as male employees with "substantially equal" duties and responsibilities. Dkt. # 32, at 21; Dkt. # 51, at 2-4. There is no dispute that Ward and Buchanan occupied the same position as plaintiff, that the conditions under which the work was performed was the same, and that Ward and Buchanan were paid more than plaintiff. Instead, defendant relies on the affirmative defense that any difference in pay was "based on any other factor other than sex." Dkt. # 32, at 24. Defendant does not dispute that Ward and Buchanan are paid more than plaintiff for the same work, but defendant argues that Ward and Buchanan are "paid more as a result of tenure with the City, tenure within the position, their education, and promotional

8

movement within the City . . . ." Dkt. # 32, at 21. Defendant also argues that both Ward and Buchanan started their employment with a higher salary due to the position for which they were hired, and defendant's system of promotional pay increases provides an explanation for the difference in pay that is not related to gender. Dkt. # 51, at 3.

Defendant argues that both Ward and Buchanan earned a higher starting salary than plaintiff and, combined with defendant's system of percentage-based salary increases, this provides a non-discriminatory explanation for the difference in salary between plaintiff and the male comparators. Plaintiff responds that courts have rejected reliance on higher starting salaries as a "job related" factor that can be used to explain differences in pay between male and female employees. In Rizo v. Yovino, 887 F.3d 453 (9th Cir. 2018), the Ninth Circuit Court of Appeals found that setting a new male employee's salary based on a higher prior salary is not a legitimate defense to an EPA claim:

> In light of the clear intent and purpose of the [EPA], it is equally clear that we cannot construe the catchall exception as justifying setting employees' starting salaries on the basis of their prior pay. At the time of the passage of the Act, an employee's prior pay would have reflected the discriminatory marketplace that valued the equal work of one sex over the other. Congress simply could not have intended to allow employers to rely on these discriminatory wages as a justification for continuing to perpetuate wage differentials.

Id. at 460. Even if an employer uses a facially gender-neutral schedule to assign starting salaries, a reasonable fact finder could still question differences in starting pay if the schedule allows the employer to exercise discretion when assigning a starting salary to its employees. EEOC v. Maryland Insurance Administration, 879 F.3d 114, 123 (4th Cir. 2018). In an unpublished decision, the Tenth Circuit has stated that "[c]onsideration of a new employee's prior salary is not forbidden under section 206(d)(iv). The EPA only precludes an employer from relying *solely* upon a prior salary to justify pay disparity." Angove v. Williams-Sonoma, Inc., 70 F. App'x 500, 508 (10th Cir.

9

July 8, 2003).³ However, an employer may rely on differences in a new employees' qualifications and experience as a legitimate, non-discriminatory explanation for differences in salary between male and female employees. Id.

In this case, each employee took a different path to becoming a senior utilities analyst and the mere fact that there are differences in their starting salaries once they were promoted to the position of senior utilities analyst is not dispositive in favor of either party. Plaintiff was promoted to senior utilities analyst in December 2014, and her starting salary at this position was $53,518.40. Dkt. # 32-13. Plaintiff had been working for defendant since 2003 and she had been employed as a utilities testing analyst since 2007. Plaintiff's initial salary upon her promotion to utilities testing analyst was $39,887.52, and before she was promoted to senior utilities analyst plaintiff was earning $46,662.98 annually. Dkt. # 32-8, at 8, 14. In December 2014, the only other senior utilities analyst was Ward, and he was earning $79,206.92 at that time. Dkt. # 32-31, at 4. Ward was promoted to senior utilities analyst in September 2012, and his starting salary in this position was $76,160.04. Id. at 6. When plaintiff was hired by defendant in February 2003, Ward was earning approximately $40,000 as a utilities testing analyst. Id. at 20. Ward had been working for defendant since 1998, and he had a bachelor's degree in accounting and 12 years experience in the accounting field when he was hired. Id. at 37. Buchanan was hired by defendant in June 2011, and he had a master's degree in business administration but no prior work experience in finance or accounting positions. Dkt. # 32-32, at 21-22. Buchanan was hired as a Treasury Analyst I and his starting salary was $51,199.20. Id. at 9. Buchanan was subsequently promoted to utilities analyst and senior utilities

---

3  Unpublished decisions are not precedential and may be used for their persuasive value only. FED. R. APP. 32.1; 10th CIR. R. 32.1.

analyst, and his salary upon promotion to the position of senior utilities analyst was $78,730.08. Id. at 10-11. Buchanan was promoted to the position of utilities analyst in May 2015 and the position of senior utilities analyst in March 2016. Id.

Defendant argues that is has gender-neutral payment policies and those policies were applied in a consistent manner to each employee. "A bona-fide, gender-neutral pay classification system constitutes a 'factor other than sex' under the EPA." Riser, 776 F.3d at 1198. However, "such a classification system serves as a defense only where any resulting difference in pay is 'rooted in legitimate business-related differences in work responsibilities and qualifications for the particular position at issue." Id. (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 525 (2d Cir. 1992)). Defendant bears the burden at the summary judgment stage to prove its "affirmative defense so clearly that no rational jury could find to the contrary." Mickelson, 460 F.3d at 1311. Defendant's primary argument is that it relies on a system of percentage-based pay increases, and employees that begin at a higher salary receive somewhat higher raises. This argument has some support when considered in light of Ward's employment and pay history. Ward began his employment with defendant in 1998, or about five years before plaintiff was hired, and he occupied a position requiring considerably more education. It is reasonable that his starting salary of $36,000 as an Accountant II was almost twice as much as plaintiff's starting salary as a customer account representative. Over the years, Ward's salary increased in a systematic manner and, by 2006, his base salary of $58,922 for the position of utilities analyst can be explained by his experience with the City and the cumulative effect of percentage-based pay increases. Ward received a pay raise of $7,230 when he promoted from utilities analyst to senior utilities analyst. In comparison, plaintiff received a pay raise of $6,855 when she was promoted from utilities testing analyst to senior utilities

11

analyst, and this is actually greater pay raise than Ward's in terms of the percentage of pay increase. Ward started at a position requiring higher educational qualifications and he has greater tenure with defendant, and his salary can reasonably be explained based on the City's system of incremental pay increases.

The City's explanation for Buchanan's higher salary is much less convincing. Buchanan was hired in June 2011 as a Treasury Analyst I, and his starting salary was $51,199.20. Buchanan had a master's degree in business administration but no prior work experience in the relevant fields. Defendant placed Buchanan at the pay grade of AT 32 at step K. Dkt. # 32-32, at 8. When plaintiff was promoted to utilities testing analyst, her pay grade was AT 36, step B, and her salary was only $39,887.52. Plaintiff worked as a utilities testing analyst for approximately seven years and her salary increased to $46,662.98 before she was promoted to the position of senior utilities analyst in December 2014. By December 2014, Buchanan was earning $59,061.99 as a Treasury Analyst II, and his salary increased to $68,943.79 in May 2015 when he was promoted to utilities analyst. This means that Buchanan was earning more money at a lower position than plaintiff, even though he had considerably less experience and tenure as a City employee. A comparison of plaintiff's and Buchanan's salaries at the position of senior utilities analyst is no more helpful to defendant. Plaintiff has been working as a senior utilities analyst since December 2014 and, as of December 2016, she was earning $66,436.24 per year. Buchanan's starting salary as a senior utilities analyst upon his promotion in March 2016 was $78,730.08. Defendant does not dispute that Buchanan has less prior work experience and less tenure, but defendant claims that his promotions to higher positions and higher starting salary justified significant pay increases over a relatively short period of time. Dkt. # 51, at 3-4.

Defendant has offered a gender neutral explanation for Buchanan's salary that is over $12,000 greater than plaintiff's, and a reasonable factfinder "could" credit this explanation. However, this explanation is not so convincing that any rational jury would find in favor of defendant on plaintiff's EPA claim. Plaintiff has more experience working for defendant than Buchanan, and she has two more years of tenure in the position of senior utilities analyst than Buchanan. However, she will always earn less money than Buchanan because her starting salary as a City employee was substantially lower than Buchanan's. The Court finds that plaintiff has established a prima facie case under the EPA and defendant has not met its burden to persuade the Court that no rational jury could find in favor of plaintiff on this claim.

**B.**

Plaintiff also asserts a claim against defendant under Title VII, and this claim is subject to a different framework than the strict liability imposed under the EPA. Id. at 1310-11. Under Title VII, the plaintiff must prove that her employer intentionally discriminated against her on the basis of her gender, and the ultimate burden of persuasion at all times remains with the plaintiff. Riser, 77 F.3d at 1199. In this case, plaintiff has no direct evidence that defendant intentionally discriminated against her, but she can rely on circumstantial evidence to support her claim under Title VII. Id. at 1199-1200. To establish a prima facie case of discrimination using circumstantial evidence, plaintiff has the burden to show that she "occupies a job similar to that of higher paid males." Id. at 1200 (quoting Sprague, 129 F.3d at 1364). If the plaintiff can show that she was paid less than similarly situated male employees, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory explanation for the pay disparity. Id. The burden shifts back to the plaintiff if the employer comes forward with a legitimate, non-discriminatory reason for any pay

13

disparity, and the plaintiff must produce evidence showing that there is a genuine dispute as to whether the defendant's reason is pretextual. Mickelson, 460 F.3d at 1311.

Plaintiff has shown that she occupied a job similar to that of Ward and Buchanan, and it is undisputed that she is paid less than her male co-workers who occupy the position of senior utilities analyst. Defendant argues that Title VII permits the Court to consider a broader class of similarly-situated employees, because "similarly-situated" is a more relaxed standard than the "substantially equal" requirement of the EPA. Dkt. # 32, at 28. Plaintiff responds that the cases cited by defendant do not support defendant's argument, and the Court should not consider a broader range of employees that were not relevant to her EPA claim. Dkt. # 44, at 28. The Tenth Circuit has stated that the similarity requirement under Title VII is "less stringent" than the EPA standard. Riser, 776 F.3d at 1200. The cases cited by defendant merely stand for the proposition that similarly situated co-workers who do not meet the "substantially equal" standard of the EPA may sometimes be used to establish a prima facie case of gender discrimination under Title VII, but the cases do not suggest that the Court should consider a broader class of employees. See Baumgardner v. ROA General, Inc., 864 F. Supp. 1107, 1110-11 (D. Utah 1994). In this case, there are two male employees in the exact same position who earn more money than plaintiff, and it would make little sense to consider the salaries of a broad range of employees in other departments. Plaintiff can establish a prima facie case of gender discrimination based on pay disparity among herself, Ward, and Buchanan, and the Court will proceed with the burden shifting analysis.

Defendant states that any differences between plaintiff's salary and that of similarly-situated male employees are attributable to "tenure, starting salary, education, and the fact that each employee has taken different paths through various positions at the City . . . ." Dkt. # 32, at 29.

"The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Although plaintiff claims that defendant's legitimate, non-discriminatory explanation has been "inconsistent and contradictory," plaintiff's arguments are more appropriately considered at the pretext stage, and it is clear that defendant has met its burden to come forward with a legitimate, non-discriminatory reason for any pay disparity between plaintiff and similarly situated male employees. See Dkt. # 44, at 29.

Plaintiff argues that defendant's legitimate, non-discriminatory reason for a pay disparity between plaintiff and similarly situated male employee is pretextual for unlawful discrimination. At this stage of the proceeding, the burden shifts to plaintiff to show that defendants' explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278

(10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Plaintiff argues that a reasonable jury could find that defendant's legitimate, non-discriminatory explanation has become a moving target and, as a result, unworthy of belief. Dkt. # 44, at 29. Plaintiff asks the Court to consider affidavits of Loretta Mills and Turley as anecdotal evidence that female employees performing finance jobs in the utilities department were routinely paid less than male employees. Id. Finally, plaintiff argues that there is evidence showing that male employees were awarded disproportionately large raises under defendant's pay system. Id. at 30. The Court initially notes that there is a substantial difference in the manner that plaintiff's Title VII claim is evaluated as compared to her EPA claim. Under the EPA, the employer's burden is one of ultimate persuasion, and "in order to prevail at the summary judgment stage the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Mickelson, 460 F.3d at 1311. Under Title VII, plaintiff retains the burden at all times to prove that the defendant intentionally discriminated against her, and "summary judgment is warranted unless the employee can show there is a genuine [dispute as to a] material fact as to whether the proferred reasons are pretextual." Id.

The Court finds that plaintiff has not met her burden to produce evidence giving rise to a genuine dispute as to a material fact that defendant's legitimate, non-discriminatory explanation for pay disparities between plaintiff and similarly situated male employees is pretextual. There are important differences in the educational history, work experience, and tenure among plaintiff, Ward,

and Buchanan. For example, Buchanan has less work experience than plaintiff in the utilities department, but he started at a higher paying position and has a master's degree in business administration. Ward has been working for defendant for approximately five years longer than plaintiff and began at a higher paying job. The Court found that defendant failed to meet its burden of persuasion to the standard required by the EPA, but this finding does not mean that the facts supporting plaintiff's prima facie case under the EPA tend to show intentional discrimination on the part of defendant. Defendant has consistently maintained that differences in each person's employment history, such as tenure, education, and work experience, explain any differences in pay, and the evidence bears out that there are significant differences among plaintiff, Ward, and Buchanan as to tenure, education, and work experience that support defendant's arguments. Plaintiff has provided affidavits (Dkt. ## 9,11) of Turley and Mills, but the Court finds that this evidence does not support a finding of intentional discrimination. Much as with plaintiff's employment history, the affidavits show significant differences between the education and work experience of the relevant employees, and the affidavits do not support a finding that any pay disparities were the result of intentional gender discrimination. Finally, plaintiff complains that Ward and Buchanan received disproportionately large raises in comparison to plaintiff. This argument ignores the evidence that plaintiff's supervisor advocated for a higher raise upon plaintiff's promotion to senior utilities analyst. Plaintiff also received a substantial raise after making a complaint about pay disparities in the utilities department, and this tends to show that defendant was not seeking to discriminate against plaintiff in terms of her pay. The Court finds that defendant is entitled to summary judgment on plaintiff's Title VII claim.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 32) is **granted in part** and **denied in part**: defendant's motion for summary judgment is **granted** as to plaintiff's Title VII claim but **denied** as to plaintiff's EPA claim.

**DATED** this 5th day of July, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE